The next case for argument this morning, 13-3014, Farzad Qureshi, et al. v. Eric H. Holder, Jr. Alright, well, Mr. Whitmer, would you proceed, please? Yes, thank you, Your Honor. May it please the Court, my name is Timothy Whitmer. I represent the petitioners Farzad Qureshi and his wife, Uzma Farzad. They are husband and wife, though their last names are different. We would ask that this Court find that the DHS failed to meet its burden of proof in establishing removability by clear and convincing evidence. In the alternative, that it has stopped the DHS from removing petitioners based upon the charges and the notices to appear. And finally, in the alternative, that it vacate the order of removal and remand proceedings with appropriate instructions based upon the proper law and regs. Well, the record looks not too promising. Wasn't there some substantial evidence that he was working without authorization? That would be the crux of the decision, but we maintain that there was no substantial evidence and that the burden of proof was misapplied. What had happened was my client, the principal, the lead alien, had entered the United States with his wife in 2001 with a lawful visa. He could work, it was a business-related visa. He overstayed because of some mistake. They allege that he worked without permission because of a mistake. The overstay was something different entirely, and that's further government misconduct. He was put into removal proceedings on October 5 of 2005. His visa, the underlying non-immigrant visa, did not expire until November 1. They initially didn't charge him with an overstay. So what the government did was they put him into removal proceedings based upon a charge of working without permission. And I'll get to Your Honor's question about that. But it's really important because once you're in removal proceedings, you can't leave the country or else you self-deport. So they put the client in a position where he was forced to overstay because he couldn't leave the country or leave the country and have a deportation order that would bar him for 10 years from coming back. But he kept working. Right, and that goes to the work issue. Between November and February, that's what the BIA relied upon. And the NTA came on October 5, and although he claims ignorance of everything because of the mistake, and indeed on October 25, he applied for a second time for an I-140. The facts are a little confusing. So he knew that he was up against the deadline. He knew that he was, again, there are two issues of removability. But as it goes to work, the only notice that he received from the government on his green card application, his permanent residence, which had the concomitant work authorization card, which he applied for, was a letter that said, page 82 of the record, it's on USCIS letterhead. It's signed by the acting director of USCIS that says you are authorized to work. I'm ignoring that. That came in August. That came in August, yes. That's the only thing he received. But his obvious, well, obvious, the clear inference is that his application for a second I-140 was in response to the NTA. Right, but the NTA, by the mere filing of it, it's like a criminal charge. It's not considered proven until the judge makes a finding. And well before then, they issued the NTA. Imagine you're the alien, Your Honor. You receive this. Why am I being put into removal proceeding? I have my green card. Or I'm allowed to work. I have this letter from the director of the USCIS that says so. So what happens is obviously with the NTA, you're put on some notice that the government may not think so. But that is precisely the thing, the race, that is going to be decided in the case. So until it's decided, he's not on notice that he can't work. That's one position. He has his position. He provides evidence that he was told you don't need a work card because you're a permanent resident. We've approved you. You're entitled to stay and work. So that's what he did. Initially, they only did it based upon the work. There's also more probative evidence that he'd been denied, which he just says, he says I didn't get it. And his lawyer says, his naughty lawyer says I didn't get it. It's not just that, Your Honor. It's irrefutable. There was no notice. It's in the record, isn't it? We have to believe that the government, was the lawyer's address the address that he provided for the notification? The thing that you're referring to, Your Honor, was in June of 2005. Yes. Okay. In June of 2005, they did not send a notice to Farzad Qureshi at his address. They did not send a notice to the lawyer at the lawyer's address. They sent a notice to Farzad Qureshi at the lawyer's address. This is not a firm like mine where I have three immigration attorneys and we have a small practice. This is a very huge firm. What did their record show that he had designated as the address? The record showed, which they got right in August, was the address they sent the approval notice to him. So, not only was Mr. Qureshi under the impression that this is the only thing that happened, I am approved, but even if it were a mistake, arguendo it's a mistake, and he had been denied, they didn't send notice as required to him at his correct address. They didn't even send notice to his attorney, regardless of the attorney's incompetence or shady dealings, which there were. So you're asking me then, Your Honor, if I remember correctly, why did he file again the I-140 and I-45? He did that based upon the advice of counsel, of course, and that is, you know, you can argue several things in the alternative, but that's well established. If his argument is, I'm a permanent resident. What counsel? Guest was still the counsel, the bad lawyer at that time, the lawyer that was admonished by the Missouri Bar. And did Guest say, but don't worry, you can keep working? I don't know what Guest would have said to the client. I didn't represent him at that time. We have some. I haven't seen it, but there's at least an affidavit from Guest, isn't there? Well, Guest disappeared and left him to argue his case pro se in front of the first immigration court. How do we have in the record that Guest denied ever receiving the June notice? Oh, Guest filed an affidavit with the immigration judge that said neither he nor the client had received the notice. All right, and how do we know in the record that Guest advised Qureshi to file the second I-140? Qureshi himself filed an affidavit to that effect. It's in the record. I don't have the page citation, but he filed an affidavit where he said that Guest only. And he didn't, of course, he didn't address the question whether Guest also addressed the work issue. Right. Right, Your Honor, but the only notice he had from- You know, a competent lawyer who goes so far as to advise file a second I-140 on the eve of the expiration would surely look into- I'm sure that he would have advised him that it was- The work issue. Right. And advise accordingly. Technically, he was still allowed to work on the L-1A petition that was still approved until November. It's not clear from the record whether the business where he was working was part of that enterprise or not. But assuming that it's- Assuming that the approval was a mistake and the denial had ever been properly served or whatever, he admitted facts which, if he weren't told he could work, would constitute unlawful work. But this is- He came in 2001 legally. He filed in two extensions successfully of that visa that gave him ultimately until November of 2005. He filed on this same application for green card, an application for a work card, which was approved. And before that card was expired and because he never received any other notice from the government, he filed for another work card and gets this great news in the mail. He knows he's got a pending petition. It says, hey, your green card's approved. You don't need this work card. You're not eligible. You can work because you're a permanent resident. It's right here. It's signed by the director of USCIS. This is not some low-level functionary in an information window saying, gee whiz, I think you can work. This is clearly distinguishable from the cases where equitable estoppel was not applied. The Mejia Perez case where it was a mere delay in adjudication, Varela and Wellington were low-level oral conversations, and the Montana case of the Supreme Court was even further removed because that was somebody trying to claim estoppel where it was a failure to issue a passport not to that person but to that person's mother while that person was in utero. This case is very, very similar. In fact, it's better than the second certain case in Cornell Rodriguez v. INS. A couple of quotes I think are instructive here. Number one, the affirmative misconduct that they found in that case was a mere failure to give a warning mandated by regulation. So in this case, there's not a failure to give a warning. There's a failure to send a denial if there is one. And then there's an affirmative statement where it says you can work, you are a permanent resident. So the government wants to take this guy and say, you worked without permission because we told you. And then once we put you in removal and said you couldn't leave, we're going to put you in removal or we're going to charge you again with overstaying when they prevented him from leaving. It is as Justice Carter- The Second Circuit invoked its- I'm sorry? You talk about the inherent judicial power that the BIA should have exercised and you cite the Second Circuit. Did the Second Circuit say the BIA has the power or we have the power? The Second Circuit was mentioning the federal court. The argument on that part of my brief- So that's your argument. No, my argument- That we should do what they did. Correct. It's twofold. It's not that the BIA was wrong. Principally, it is that- You argued it wrong. I apologize. It is a little confusing. It's very important. We did argue that this court has the power. We're asking you to exercise it, absolutely. But we also tried to distinguish why the board had the power in this case because they're not asking immigration to do something which is an independent agency like in the case that the board cited. But rather, they're merely stopping the DHS, which is a party before them in that lawsuit, to not deport based upon these facts. I believe the better argument is that the Court of Appeals has the jurisdiction. I'm happy to direct it to that sentence. Justice Cardozo stated long ago that a fundamental and unquestioned principle of our jurisprudence is that no one shall be permitted to take advantage of his own wrong. They were quoting the R.H. Stearns v. U.S. Supreme Court case from 1934. That's the Cornell Rodriguez case. Notions of fundamental fairness, basic notions of fundamental fairness, must preclude the government from taking advantage of consulate, that's the consulate officers, dereliction, and that a contrary result would be a manifest and serious injustice. And then they also point out something which is very true in this case, Judge. This is not a person who ever violated status before. It's not an illegal alien, didn't come in illegally, didn't break the law, not a criminal. It says, unintentional injustices too often can be visited upon the naive, albeit honest alien who is understandably unfamiliar with the labyrinthine intricacies of our immigration laws. How would you distinguish Kennedy in the Supreme Court case? Kennedy on the question of... The government says this is like the unfortunate misinformation to the aliens that the Supreme Court says did not get a remedy in Kennedy. Right. In that case, you had a failure to issue... That was in Montana. In Kennedy, it was oral advice. It was misinformation, bad advice. It was a... The particular facts are escaping me at the moment. But this one is not a mere failure to act or a mere bad piece of advice. It is a letter, unofficial letterhead, from the director of USCIS saying, you are a permanent resident. You don't need to work hard. You may work. I don't know how much clearer... I mean, it is not for the alien to understand that this type of letterhead isn't the normal letterhead that approval notices are issued on. It's from the U.S. government and signed by the highest-ranking member of the USCIS. Equitable estoppel must be applied here, Your Honor, or else all of our other arguments we rely upon. I think the rescission argument we would not... I think the rescission argument we would withdraw before Your Honors because it is possible to just go straight to removal. Under this case, though, the due process violations there, we stand by that argument. I'm kind of summarizing because I'm into my rebuttal time and I want to save it. But a word on Mrs. Farzad's removal. She was put into removal nearly two years after Mr. Qureshi pled to the charges and was found removable. She never had a pleading. It was never found that she was removable. Merely, in the end, she was ordered removed. That clearly is a manifest error. The government may argue we fail to exhaust. Well, they do argue. Yes, and I understand that even the Etchew and Jang v. Gonzalez case, which is the Eighth Circuit, and Hormel v. Helmering, which is the Supreme Court case cited by that, there's a very good discussion of issue and remedy exhaustion. But assuming that we have to have issue exhaustion, this is such a plain error. This is exactly one of those cases that in Hormel and Etchew that would be appropriate not to strictly apply it. But isn't it also clearly a correctable error? If you raise it to the agency, to me, it's a classic example of an easily correctable oversight. We would have two arguments to that. Yes, it is clearly a correctable, but we would argue that it was raised below because the removal order itself was the subject of the appeal. And if you find that that's too general, which we understand might be something you might think, it would qualify for an exception. This is absolutely just plain law. The law requires, the IJ shall require the respondent to plead, 8 CFR 124010. Also on the issue of the two competing notices from immigration, one which was received at the correct address so they knew it versus the one which was never received, which isn't noticed at all, would be versus INS. It's a Supreme Court case. It states that no deportation order may be entered unless it is found by clear unequivocal and convincing evidence that the facts as alleged are found to be true. So what are you asking for a remand for them to consider? We would ask that you remand the case so that a correct order could be issued for Mrs. Farzad if she's allowed to plead. But more importantly, and I think first and foremost, we would ask that you stop Department of Homeland Security from removing our It clearly qualifies. I'm really into my rebuttal. It is affirmative misconduct. It meets all the other standards easily. It was intended for him to rely upon it. He relied upon it. And then once he relied upon it, they punished him. Then after they punished him, then they say, wait, you didn't leave either, because we put you in removal. We'll punish you for that too. He didn't do anything wrong. He was the naive, albeit honest alien. And this has nothing to do with the bad lawyering, which did exist. Thank you. You're welcome. We'll hear from counsel for the government. May it please the court, my name is Michelle Sarko. I'm here representing Attorney General Eric Holder. In this case, substantial evidence supports the board's finding that Petitioner's Irremovable was charged, where Mr. Koresh… You're going to have to speak up. Sorry. Yes, would you pull the microphone closer? I'm not even sure that… I'm not sure it amplifies. Okay, I'm not sure it would help. Yes, keep your voice up, if you would, please. Sorry. Substantial evidence supports the finding that Petitioner's Irremovable was charged, where Mr. Koresh conceded that he worked during the period under which he was not authorized to do so. And both Petitioners remained in the United States longer than they were permitted. Well, wasn't there some misleading information he got from the government? Well, what happened was he had applied for an I-140 alien worker visa, and then for adjustment of status based on that. While that was pending, and he was authorized to work to a certain date, and while that was pending, he was authorized to work to a certain date. And then in April of 2005, CIS denied his I-140 petition due to abandonment because he had failed to submit additional evidence requested by CIS under the required… about the deadlines, or by the deadlines, sorry. And it's your position that he got all of the notices? It's our position it was sent to him at his attorney's office. Now, he claims he didn't receive it, but it was sent… Now, where in the record does it show that was the designated, that the addressing of, I guess there were two denials, April 5 and April 19, and that those were mailed to the address and addressed as designated by him. It is my understanding that when these proceedings all start, that the alien is required to tell the government how to contact him. And counsel says that the way those April notices were mailed is completely different than the way that the June, and I haven't looked at that. Well, the applications for adjustment and the… I can't point to that because I didn't have it in the record, so I can't exactly answer your question. Is it in the administrative record? Are we going to be able to make sure that what the government aversed was proper mailing of notices that the alien claims and his lawyer claims were never received, went to the address that the government had been told to use? There is no doubt that that was his attorney's address. Whether the attorney told the government to use that as a mailing address for him on the adjustment application, I'm not sure. What was the address of the June letter that he waived? I didn't bring the appendix, so it's not in the addendum. Is it the same? Of the…hold on. I'm sorry, I cannot answer your question right now. I can write a letter back to the board. Well, is it in the administrative record? The application for filing for the petition for immigrant worker is in the record. And the adjustment application, I think, is in the record as well. Does that include the document that I understand your client uses? I didn't have it, so I can't go to it. Maybe I can file a supplement and point to the pages in the record if the court would like. Well, we're bound by the administrative record. No, no. I mean, I can file a letter pointing to the pages in this administrative record. I just can't do it right now because I didn't tab those pages for the argument. What are we talking about? Where this notice was mailed? Where it was mailed? No, he's asking what was the address that the attorney gave the government to mail the notice. Wasn't it his law firm's address? I assume that's correct, but I don't know that that's correct. I do know that he was… It was mailed to that address? Yeah, there's no doubt it was mailed to the law firm's address. That's not in dispute. Judge Loken is asking whether that was the address given by the attorney to the government for purposes of the adjustment application, for contact purposes. That I can't answer right now. I will file a letter with the court. All he said was the law firm address, but he didn't . . . He said that . . . There can be ambiguity as to whether it should be addressed to the lawyer or to the alien, which can wind up lost in the law firm mail room. It's possible, but the whole point of this is that for equitable estoppel, you have to show affirmative misconduct, and you have to show intention to deceive. There was no intention to deceive here. They sent the letter to him at his attorney's address, clearly wanting it to get to him. Now, they may have not done it correctly. Maybe they didn't put care of or whatever. But there was no intention by the government to deceive him. Much of the point you're making in the brief, which taking April notices in context makes sense, is that what he's relying on in June was what you call dicta. But if there is no April notice, not because of his inadvertence or his lawyer's mistake or the Postal Service's mistake, but because your client didn't mail it to the right place, it becomes to me a somewhat different case when we're talking about our inherent power to remedy government mistakes. No, Your Honor, because I would say that first, we don't know that that wasn't the address given by the attorney. No, but that's your burden. If it's relevant, it was the agency's burden. Second, I would say that if it went to the attorney's address, then it doesn't show that there was affirmative misconduct by the government because it was mailed out there to him. So the government intended to give him, and there was no intention to deceive. And now the subsequent letter that came from the Employment Authorization Unit that was sent out and saying which the board found was dicta that he had been granted adjustment status and therefore he didn't need the employment authorization because once you're granted adjustment, you can work. Well, one thing I can't hear what you're saying, but secondly, why don't you tell us what went wrong with this case, in this case? Well, I think in this case, the government, there was denial of the adjustment status, the first application, and denial of the I-140 on the first application. Before you can get adjustment status, you have to get an approved visa petition. That was denied. The adjustment application was denied. That was sent out in April to him as the attorney's address. Subsequently, there was the mistaken letter sent by the Employment Unit at DHS saying that his employment application was denied because he didn't need it because he was granted adjustment. Now, that was an error. Subsequent to that, there was the notice of intent, the NTA, and the notice of putting in removal proceedings, charging him with being out of status, and that gave him notice then, for sure, that the government thought that there was no adjustment that had been denied. Is the counsel right that while those removal proceedings are pending, he either must or will likely be permitted to remain in the country? I know there are removals while things are pending on appeal. I'm not so sure about it at the outset of a removal proceeding. Right. Well, I think while it's pending— That's a preamble to the question. If you are in removal and you are remaining with the permission of your client, can you get an I-765 to keep working? While you're in removal proceedings, I think under certain circumstances you can get employment authorization. Particularly if the removal turns on whether the employer is somehow helping out. Right. And there was a six-month period where he was not granted employment authorization. And there was even a couple months— He got it. There was a couple months period after adjustment application—I mean, I'm sorry, after the notice of the NTA was filed, giving him notice that he was here, that the government at least thought his application was denied and he was here illegally. There was still a few months before he got the new employment authorization that he still worked here illegally without authorization. So there was definitely a period where he was working here without authorization. But it seems to me the case for him that you need to refute is that I was told I was a lawful permanent resident, and therefore I could keep working. My second I-765 in June was superfluous. And then he gets a notice to appear. Right. And the notice— If he was in fact—I don't know if you can—I don't think the agency can issue a notice to appear in this circumstance to a lawful permanent resident. So that should have been a red flag to Kirishi. But why isn't it a bona fide position for him to believe that even though he's in removal, when he's been told you don't need a 765 to keep working, he can keep working? Well, because when he got the NTA, that should have alerted him that they said he was out of status and that he was working here. Well, it alerted him to file a second I-140. Right. But just because you file an I-140 doesn't— I know. —automatically— But does that also tell him a reasonable—Haley, of course, he puts in an affidavit he was represented by counsel. Does it tell a reasonable counsel that you can't keep working despite that June letter? Well, yes, because if you get an NTA saying that you're out of status for working here without authorization, then you would think that that gives him notice that the government thinks he's here without— Well, he's got conflicting documents. Well— And so he filed— But the second one came later. —that when the government responds to it, includes a work authorization. And now he's— But he didn't get that new work authorization until later. I know. He's removed for working in the interim. He didn't get the new work authorization until February of 2006. So there was a gap where he was working. Right. And he's removed for the gap. I assume he got that in February of 2006 when removal proceedings are still pending. Well, he got it because he filed the— Because he filed the second— —the second application. Right. So he did the right thing by filing the second 140. Well, we're not saying he didn't, but that was also denied eventually. And that was denied on the merits by the DHS—I'm sorry, the CIS director. So is that an alternate ground to affirm? Well, that was denied, so he clearly— You can't get adjustment without an approved visa petition. And so he has no ability right now to get— He's out of status. He overstayed, which is the key thing, because he overstayed. And so he's out of status, and there's no basis for him to be in status right now. He has no approved I-140, he has no approved adjustment application. And so if you were to allow him to stay here, he'd be staying here without any status, essentially. If it was reasonable for him to keep working after getting the NTA until his second 140 application was resolved on the merits, if that was reasonable, what is—I mean, as a matter of law or equity, what happens to this case? Where are we? Well, even if you set aside and you don't use the grounds for working without authorization, he is still the other ground that he is here without status. He has no visa petition to be here. Past November 105. Is that right? Yeah, November 1, 2012. That's when his authorized stay expired. Right, right. So past that time, he has no— Is he, in terms of coming back into the country or being able to work here again, is he in a worse position for being removed because he worked, because of his unauthorized work in that gap period than he would be if he was just removed because he overstayed his visa? No, I think either way, if he's removed under either provision, it's the same. The consequences are the same. This August 15th letter says, A review of your record indicates that the application to register permanent residence or adjust status has been approved. What was he supposed to read into that? Right. We don't deny that that letter in August was incorrect. That was an inadvertent error on the part of the government. What's the name of the case that says that those who deal with the government must turn square corners? Apparently, it doesn't apply to the government. Well, in order to apply equitable stop, the court— Because I read what the IJ said and maybe even the BIA. If I read between the lines, it said, We'd like to grant this guy relief, but we can't do it. Maybe the court can. Is that sort of an invitation to us? No, I think what they were saying was that they statutorily are not authorized and by regulation to do equitable stop. Now, what we're saying in our brief is that that doesn't— Well, but Ms. Upchurch has never been disciplined for making this error. Was that the author of the letter? Whoever signed this letter of August 15th. I don't know what happened. I'm sure she got her bonus or longevity increase. I mean, I'm saying I'm sure, but I would guess that— Well, anyway, that's part of the government. The point that I'm trying to make is that in order to apply equitable stop, we have to show affirmative misconduct. I don't believe that— We have to show what? Affirmative misconduct by the government. Why wasn't this affirmative misconduct? Again, under the cases, the Montana v. Kennedy case. Well, the Second Circuit case, they did find in that case that a consular officer in the Dominican Republic— Well, we can read it. I shouldn't ask you about it. All right. I think your time is up. We thank you for your argument. Okay, thank you. One more question back to the notices. Now I see where the erroneous letter was sent to him at a home address. Did the government prove by clear and convincing evidence that the April notices and the June notices were either sent to the same address or were sent to different addresses, but that wasn't yet another mistake? Well, again, I don't know. On the employment authorization form, I don't know which address he gave. It may have been a different address than he put on the adjustment application form. I'm not sure. I can look and see what's in the record, and I'll file a letter with the court. Well, we had the I-140, the I-485, and the I-765, and it is possible to fill those out designating different addresses? It's possible, yeah. I would be surprised. I plan to check whether that was addressed by the government in the administrative hearing. Okay. Whether, as Judge Wolman says, the government cut square corners in its notification obligations. Okay. Well, look, you think the documents are there. Well, I'm not sure all the documents are there, but some of the documents are there. That's the government's fault, isn't it? I mean, given the burden of proof. Again, I think that the address that he sent to the attorney with his name on it was sufficient, and if there was a mistake and it didn't get there, it did not show intensity. Well, the mistake was, I guess his mistake in the first instance was hiring a lawyer who was either incompetent or dishonest, and to what extent that's been proved by the Missouri Supreme Court's letter of admonition, so what do we make of that? Well, he did not proceed on that ineffective assistance of counsel claim, so he waived it before this court. Thank you. Thank you. We'll hear from Mr. Whitmer on rebuttal. If I may, I have five seconds left. Considering the complicated facts. You may have a minute or two, yes. Thank you, thank you. Maybe we can get this straightened out a little bit. Thank you. In my mind, I think my colleagues are clear, but I seem to be lacking in understanding. To Judge Loken's last point, it is the government's burden of proof, and so you won't find it in the record, Your Honor, that this was even discussed. In a sense, the judge required my client to prove he was a permanent resident rather than for them, if there are two inconsistent notices, they need to present evidence. There was no real discussion, even by the VA. I'm talking about addresses. I'm not talking about whether they're inconsistent. Correct, but if it's the government's burden, then at least it should be remanded for a hearing on what if they met their burden. There was no discussion on it. No, not, I mean. Okay, I apologize if I'm going the wrong direction. Well. The affirmative misconduct. You missed my point. I apologize. Go ahead. The affirmative misconduct is not the failure to give notice of the April, but rather the affirmative approval that was sent in August. That was intended to be relied upon. When you look to intent, you judge the intent by the words on the page and the signature and the head of the very division that's entitled to give the relief. Two things about that, Your Honor. Would the alien be in an equitable estoppel? Can the alien reasonably find out the truth when they rely upon this? And it's funny because at page 92 of the record, Mr. Qureshi is very meticulous. He was checking online, and there was nothing. He checked that on October 27 after they put him in removal, and it didn't say there that his case had been denied. Also, again, with the NTA giving him notice that he shouldn't work, the NTA is merely their argument versus his argument that he could. If he followed an alternative view to try to get another I-140, that was his right under the time. It doesn't mean that he wasn't right in assuming that he was allowed to work. Also, there was an RFE, there was a request for evidence, that his lawyer responded to. The denial in April was for abandonment because they said they didn't receive a response. The lawyer. Well, there were two notices. Correct, but in April. There were two in April. Correct. The basis of the alleged denial of April was that he abandoned the case based upon failing to respond to a request for evidence. It was Guest's argument, the lawyer, that he had done that. But the one that really mattered was it was denied because the other one was denied. Well, that was the later one after the NTA. That was the work one, the I-485. Correct, but that was the I-485 adjudicated by the CIS, which is an agency. It had nothing to do with the removal charges. That was an independent group deciding that. May I finish that? What I mean to say is he did everything right for ten years. Also, he had three years of eligibility for L-1A left if he wasn't found removable. So there is status that he could pursue that he could not pursue while he was in removal. So it's untrue that he would be here without status. He could pursue an L-1A. Also, there are modes of deferred action. They could close the case. They could grant work authorization. There are ways to keep him here. It's untrue to say that he would be left here in perpetual limbo if he decided to grant equitable status. So where is he held right now? He is not in custody right now. He and his wife are in St. Louis and hope to prevail. Essentially, he followed the government's advice, tried to do everything right, and they punished him for doing exactly that. Thank you very much for your consideration. Well, the case is submitted. We'll take it under consideration. And we will be in recess for a short time.